# WHEELING.

HEDRICK *et al. v.* TUCKWILLER *et al.*

Submitted January 19, 1881—Decided November 11, 1882.

(*SNYDER, JUDGE, Absent.)

1. Where a man is executor of a will and appointed guardian for his infant children by the will, and manages the estate of his testator, also that of his children as guardian, does not keep separate accounts, and takes money of his own, as well as money belonging to the estate, and invests it in land and has it conveyed to his infant children, this is a fraud on the residuary legatees under the will; and the land is chargeable with the money so diverted from its proper place, although there is no proof, that the children had any knowledge of the fraud.  (p. 497.)

Appeal from a decree of the circuit court of the county of Greenbrier, rendered on the 5th day of June, 1880, in a cause in said court then pending, wherein Samuel A. Hedrick and others were plaintiffs, and Samuel Tuckwiller and

*Counsel in the court below.
62

others were defendants, allowed upon the petition of said plaintiffs.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court.

*Adam C. Snyder* for apppellants cited the following authorities: 28 Gratt. 162; 2 Lead. Cas. Eq. (1877) pt. 11 p. 1805; 2 H. Blacks. 235; Sto. Part. § 34; 68 Me. 208; 61 Me. 361; 30 N. J. Eq. 530; 28 Am. 721; 10 W. Va. 87; 23 Ala. 346; 8 Cow. 328; 14 N. Y. 281; 27 How. Pr. 391.

*John W. Harris* and *Price & Preston* for appellees, cited the following authorities: 4 Rand. 282; 7 John. Chy. 17; 14 Am. Dec. 641; 1 Com. Dig. p. 560, §§ 4–11; 11 Gratt. 111; 15 Gratt. 11.

JOHNSON, PRESIDENT, announced the opinion of the Court:

The plaintiffs filed their bill in the circuit court of Greenbrier county in January, 1880. The bill alleges, that in 1877 the plaintiffs instituted a suit in equity to require Samuel Tuckwiller to settle his executorial accounts as executor of David Tuckwiller, deceased, and to compel him to pay over to them the legacies due them under the will of said David Tuckwiller; that by a decree in said court it was ascertained, that said Samuel Tuckwiller was indebted to the estate of his testator in the sum of five thousand three hundred and thirty-two dollars and seventy-four cents, of which one-fourth (one thousand three hundred and thirty-three dollars and eighteen cents) with interest thereon from May 25, 1878, was decreed to the plaintiffs in this bill other than A. C. Snyder, commissioner, together with the costs of said suit, which amounted to seventy-one dollars and thirty cents, and execution was directed to issue therefor; that on the 19th of August, 1879, the plaintiffs filed an amended bill in said suit to sell a tract of one hundred and six acres of land belonging to said estate, to obtain their interest in the proceeds; that by the answer and exhibits of Samuel Tuckwiller it was found, that he had

sold said land to one Samuel Block, and that he was indebted to the estate of his testator on account of the purchase-money thereof collected on the 27th day of October, 1879, in the sum of three hundred and fifty-eight dollars and eighteen cents; that on the 4th day of November, 1879, a decree was entered in said suit ratifying and confirming said sale and decreeing *inter alia,* that the plaintiff, A. C. Snyder, as commissioner should recover of said Tuckwiller the said sum of three hundred and fifty-eight dollars and eighteen cents with interest from the 27th day of October, 1879; that execution issued on said decree for one thousand three hundred and thirty-three dollars and eighteen cents, and was returned, "no property found;" that when said decrees were rendered, the said Tuckwiller owned a large amount of property both real and personal in the county of Greenbrier but pretended and fraudulently represented to his creditors and the officers of the law, that said property belonged to his children, the defendants David Tuckwiller and Sarah E. Wilson, and, that he was the owner of no property not exempt from legal process; that he represented himself a sufficient surety on an executorial bond of one Martha A. Moss; that he had himself assessed with personal property in the year 1878 to the value of four thousand one hundred and forty-three dollars; that in the year 1862 said Samuel Tuckwiller qualified as executor of the will of David Tuckwiller, and during the years 1862, 1863 and 1864 he paid in Confederate money, as that was the only currency in circulation in Greenbrier county at the time, debts due from said estate to the amount of over four thousand six hundred dollars, and in May, 1869, he sold a tract of land of about two hundred acres belonging to the estate of his testator to his son, the defendant David Tuckwiller, then a minor under fourteen years of age, at the price of four thousand three hundred and seventy-five dollars, but that the real purchaser was the said Samuel himself, and the said land was paid for by crediting the price thereof on the indebtedness of the estate to him as executor; that on 2d day of December, 1871, a tract of three hundred and six acres of the land adjoining the said two hundred acres was sold at public auction under a decree in the case of *Dwyer* v. *Piercy,* and said Samuel became the purchaser at the price of

four thousand one hundred and thirty-one dollars and ten cents, but had the sale reported as made to his infant son David, that sale was confirmed, and a deed therefor by a commissioner of the court made to David, that Samuel paid the whole of the purchase-money; that on the 22d day of January, 1875, said Samuel bought a valuable farm known as the "Ezra Walker place" at the price of six thousand dollars, that said Samuel paid for said farm, but that with intent to defraud his creditors he had the farm conveyed to his two children, David and Sarah; that on the 7th day of September, 1876, he bought a moiety of another tract of land, the whole price being six hundred and twenty-five dollars, but that to avoid the payment of his debts he had the same conveyed to his son, David; that he bought another tract of two hundred acres of land from one Fleshman, paid the whole of the purchase-money, but has no deed of record for the same.

The bill charges, that the said two children, David and Sarah, when said lands were purchased, were infants; that neither of them paid any part of the consideration for said purchase; that the whole consideration was paid by said Samuel Tuckwiller; and that each and all of the said conveyances were voluntary, fraudulent and void as to plaintiffs; and that said decrees are liens on said tracts of land. The bill further charges, that the said tracts of lands were paid for as follows:  The two hundred acre tract as before stated, and two thousand dollars paid November 22, 1875, and five hundred dollars February 17, 1877, on the "Ezra Walker place" both being paid by drafts drawn on the individual funds of said Samuel on deposit in the Bank of Lewisburg; that after the decree in the former suit was rendered said Samuel had to his credit in said bank over one thousand two hundred dollars, which he soon after drew out, on his own check to avoid the payment of said decree if possible; that he paid on the lands either directly or indirectly the following sums collected by him as executor of David Tuckwiller, and which go to make up the greater part of the *devastavit*, upon which the decree of one thousand three hundred and thirty-three dollars and eighteen cents is based, to-wit:  From Joseph Myles executor, at least six hundred and forty dollars; from the M.

E. Church in Lewisburg one thousand four hundred and sixty-two dollars and forty-two cents, which was collected in 1869; from Henry Hedrick three hundred dollars, which he collected in 1871; one share in fair ground sixty dollars, collected in 1876; from a sale of bonds on White Sulphur Springs Company, he collected March 25, 1876, two thousand five hundred dollars; that all these debts were due to the estate of David Tuckwiller, and amount to nearly five thousand dollars; and that said Samuel has not accounted to the said estate for over two thousand dollars of said collections, leaving about three thousand dollars, which he applied to his own use or paid on said lands; that these sums were the money of the estate, of which at least one-fourth is the money of the plaintiffs, but that said Samuel fraudulently and shamelessly claims, that said lands were purchased with the money of his children; that less than half of the funds of the plaintiffs, which he has invested in said lands, would pay all, that they now claim from him.

The bill charges, that it is impossible for said Samuel to have squandered the assets of the estate so collected by him, for he is not a wasteful or extravagant man. The prayer of the bill is, that the said conveyances to his children may be declared void as to the debts of plaintiff, and that said lands may be subjected to the payment of plaintiff's demands and for general relief.

Samuel Tuckwiller answers to the bill, and in his answer admits his qualification as executor of David Tuckwiller, and that a decree was rendered against him for said sum of one thousand three hundred and thirty-three dollars and eighteen cents. He denies, that he has any estate, out of which said decree can be paid, and denies that he has been able to pay any debts for twenty years. He says, that he was so unfortunate as to become a surety for a sheriff, who became a defaulter before the death of his father, and judgments against him as such surety were recovered, which swept away all his property; that his father knew this, and in making his will determined, that none of his estate should be taken to pay these liabilities; that by his will he gave a considerable portion of his estate to David Tuckwiller, his grandson, and son of respondent, and to the children of respondent there-

after to be born; that to them he gave the farm, on which testator then resided, and all the lands adjoining it except the "Ezra Walker place," to them and their heirs forever; that to them he also gave some slaves, his household and kitchen furniture, farming utensils, four horses, six cows and all his hogs and perhaps some other property; that he provided, that respondent should be guardian for his children. Respondent says that he did no farming on his own account; that he was executor on the one hand and guardian and agent on the other; and that whatever business he did was either in the one character or the other; that in the character of guardian and agent he has not yet been called on to account; in the character of executor he has been compelled to account the result of which has been set forth in the plaintiff's bill; that he was found indebted to plaintiffs in the sum of one thousand three hundred and thirty-three dollars and eighteen cents. Respondent denies that he purchased or paid for in whole or part, with the funds of David Tuckwiller, deceased, any of the lands in the bill mentioned, and says that he has been already compelled to account for the whole of the Myles Luddington debt, also the debt on the Methodist Episcopal Church in Lewisburg stated at one thousand four hundred and sixty-two dollars and forty-two cents, also the debt of Hedrick charged at three hundred dollars; also the share in the fair grounds charged at sixty dollars; also the White Sulphur Springs Company bond charged at two thousand five hundred dollars and that the plaintiffs seek in this suit to duplicate the charges of these debts; that none of these moneys, or certainly very little, if any, was applied to the purchase of any of the lands in the bill mentioned.

Respondent affirms, that all the business which he transacted in connection with these lands, was transacted with the funds of, and on behalf of the children and for their benefit; that he never made any investment as executor, that he has not, since he was sold out, as aforesaid, been the owner of any property. He says, that he was charged with *devastavit* by not allowing him for cattle, which, he claims, were taken by the Federal troops, and for Confederate money, &c. He says, that he may have had funds deposited in his own name, but it was his children's money. He admits, that he was

security for Mrs. Moss, but denies that he represented himself as worth anything, and avers, that when then examined, he said, that he did not know, that he was worth a dollar. He says, that it may or may not be true, that he was charged on commissioner's books with four thousand one hundred and forty-three dollars; but he avers, that that does not show the property was his. He says the property belonged to his children, but being in his possession he was no doubt charged with it. Respondent says that he was when he made the purchase of land, and still is, indebted to each of his children largely beyond any balance, which may have been put into the land. He denies all fraud charged in the bill, and prays to be dismissed with costs, &c.

The will of David Tuckwiller is exhibited with the answer, and shows that the residue of his estate is to be divided among the children of Samuel Tuckwiller, Catherine Rader, Sarah Davis and Nancy Hedrick in four equal parts.

David Tuckwiller answered the bill, he admits, that he was an infant during the land transactions in the bill mentioned. He claims that it was the property of himself which was used to purchase the lands conveyed to him. He ratifies and confirms the said purchase made on behalf and in the name of respondent, and claims the full benefit thereof.

A. J. Wilson, the husband of the daughter Sarah, answered the bill and insisits, that by virtue of his marriage with Sarah E. Tuckwiller he acquired an interest in both lands and personal property, which cannot now be disturbed; that if the said property did not belong to said Sarah at the time of said marriage, he had no notice of it and cannot be affected by the fact.

Sarah E. Wilson, by her guardian *ad litem*, also answered the bill.

Samuel Tuckwiller in his answer "denies that he purchased or paid for in whole or in part with funds of the estate of said David Tuckwiller any of the lands in the bill mentioned." He then refers to the debts he is in the bill charged with collecting, and says, that he was compelled to account for them in his settlement, and then modifies the above sweeping denial, by saying, "none of these moneys, or certainly very little, if any, was applied to the purchase of any

of the lands in the bill mentioned." Then in his deposition on cross-examination, he admits the collection of the claims, and in answer to the question : "Did you not directly or indirectly apply the proceeds or a greater part of said collections to the payment of the purchase-money of the lands in the bill mentioned, as alleged to have been purchased by you, *i. e.* the Piercy land, the Fleshman land, the Ezra Walker place and the Madison McClung land ?" Said, "I don't think I applied more than half of it, if I did that." Any man, who will make such reckless statements in his answer, and then under oath in his deposition vary them, as Samuel Tuckwiller has done needs strong corroboration to entitle him to be believed. Again it appears by the deposition of William Rader, that he, Tuckwiller, told him, he thought there would be owing to the four shares, if all the debts were collected, eighteen or twenty thousand dollars. This he said soon after the war. To David Hedrick since the war, he said, that there would be coming to his children about four thousand dollars; that if the "Springs" debt was collected, there would be a good deal more. The "Springs" debt was the bond against the White Sulphur Springs Company.

On the 5th day of June, 1880, the case was heard ; and the court entered a decree for one-half the one thousand three hundred and thirty-three dollars and eighteen cents with interest and for one-fourth the three hundred and fifty-eight dollars and eighteen cents and costs of suit, and ordered the "Ezra Walker place" to be sold by a commissioner appointed for the purpose, to pay the same, unless the said moneys and costs were paid in sixty days.

From this decree the plaintiffs appealed.

It is passing strange that the interest of Tuckwiller's children so prospered in his hands, while the interests of the estate, which as executor he was managing, languished. All the losses seemed to have been charged to the estate, and the profits seem to have gone to the benefit of the children. There is no evidence, that Samuel Tuckwiller kept any accounts, either as executor or guardian. He had the property of the children, as he claims, charged on the assessor's books as his own, and according to his claim kept their money

deposited to his individual credit. From all the facts and circumstances of this case I am convinced that Samuel Tuckwiller, in fraud of these plaintiffs, his own sister's children, diverted more of his own means and of the moneys of the estate, which ought to have gone to pay them, than is claimed by them in this suit; and that on the principles decided by this Court in *Rose & Co.* v. *Brown et ux.*, 11 W. Va. 122, these moneys thus fraudulently diverted can be followed into the several tracts of land, where they were invested, even though there no is proof, that the children, to whom the lands were conveyed, participated in the fraud. The husband of Sarah E. Wilson has no such claim here, as will prevent the lands from being charged with the money so diverted. I am satisfied, that the decree should have been for the whole one thousand three hundred and thirty-three dollars and eighteen cents with interest from May 25, 1878, and for the whole of the three hundred and fifty-eight dollars and eighteen cents, which sum will have to be distributed under decree in the suit, in which said A. C. Snyder was appointed a commissioner to collect said money.

The decree of the circuit court of Greenbrier county is therefore reversed with costs and a decree ordered to be entered here as above indicated. And this cause is remanded for further proceedings.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT REVERSED.　　CAUSE REMANDED.